UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICOLAS WEBB, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00246-TWP-KMB |
| | ) |
| MIAMI CORRECTIONAL FACILITY, | ) |
| | ) |
| Respondent. | ) |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Nicolas Webb's ("Mr. Webb") Petition for Habeas Corpus. (Dkt. 1.) Mr. Webb, an Indiana prisoner, filed this civil action to challenge a prison disciplinary proceeding identified as Case No. MCF 20-10-0250. For the reasons explained in this Order, Mr. Webb's habeas petition must be **denied**.

### I. OVERVIEW

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. THE DISCIPLINARY PROCEEDING

On October 17, 2020, Lieutenant James Robertson ("Lt. Robertson") wrote a Report of Conduct ("Conduct Report") charging Mr. Webb with violating A-106, Possession of a Dangerous Weapon. (Dkt. 9-1.) The Conduct Report states:

> While conducting a wellness check in EHU[,] I[,] Lieutenant James Robertson as a possible assault [sic]. When[] I arrived[,] I pat searched all the offenders[.] I arrived at the showers and began searching offender Webb Nicholas, 209609. Upon searching his shorts, I found an edged weapon approximately 5 5/8 inches with a taped handle and cardboard sheath in the pocket.

*Id*.

Mr. Webb was initially found guilty of this charge on October 29, 2020. Mr. Webb appealed and on December 9, 2020, the Warden ordered a rehearing. (Dkt. 2 at 5.) It is this rehearing that is the subject of the pending habeas petition. (Dkt. 9 at 3; Dkt. 2 at 1.)

Mr. Webb was again notified of the charge on December 22, 2020, when he received the Conduct Report and Notice of Disciplinary Hearing ("Screening Report"). *Id.*, Dkt. 9-3. He pled not guilty to the charge. *Id*. On his Screening Report, Mr. Webb requested the appointment of a lay advocate, a witness, and the video of the incident. (Dkt. 9-3.) Specifically, Mr. Webb stated that he wanted Offender A. Kelsheimer to testify that the weapon belonged to him and that the video would show that Mr. Webb did not have the weapon on his person.[1] *Id*. The hearing officer granted Mr. Webb's request for a lay advocate. (Dkt. 9-4.) The screening officer also attempted to procure Mr. Kelsheimer as a witness, but Mr. Kelsheimer refused to testify. (Dkt. 9-5 and 9-8.)

On December 28, 2020, the hearing officer gave Mr. Webb a video summary because of security concerns that viewing the video would permit him "to know camera capabilities and avoid detection in future." (Dkt. 9-7.) The video summary states:

---

[1] There appears to be a dispute on the spelling of Mr. Kelsheimer's name. Dkt. 9-3 (using the spelling Kelshimer) and Dkts. 9, 9-5, and 9-8 (using the spelling Kelsheimer). The Court will use the spelling "Kelsheimer" in this Order.

> On December 28, 2020[,] I (Officer S. Hall)[,] reviewed the DVR of EHU 3/4 on October 17, 2020 starting at 3:20pm by the request of Offender Webb, Nicholas #209609 in regards to case number MCF 20-10-0250. Upon the review of the DVR[,] I see Lt. Robertson enter the housing unit at 3:31pm. I then see Lt. Robertson at the showers searching the black shorts of Offender Webb who was still in the shower[.] After the search of the shorts was done[,] I see Lt. Roberts[on] place something into his pocket, and then walk away from the shower area.

*Id*.

A hearing was held on January 15, 2021. (Dkt. 9-6, Dkt. 9-9 1.) Mr. Webb again pled not guilty. (Dkt. 9-6.) At the time of the hearing, the hearing officer recorded Mr. Webb's statement as: "… per policy 7 business day[s] for [re]hearing without postponement. … [T]he knives were not found on me." *Id*. Based on Mr. Webb's statement, the Conduct Report, the photograph of the weapon, and the video of the incident, (Dkts. 9-1, 9-6, 9-7, and 13), the hearing officer found Mr. Webb guilty. (Dkt. 9-6.) The sanctions imposed included the deprivation of one year of credit time, a demotion of two credit classes, a written reprimand, the deprivation of forty-five days of privileges, and the imposition of one year in restrictive housing, suspended. (Dkt. 9-6; Dkt. 9-9.)

Mr. Webb appealed to the Facility Head and asserted several grounds, which can be summarized as follows: 1) the hearing officer violated the prison's policies and procedures for approving and appointing lay advocates, documenting denied witnesses and evidence, permitting cross examination and confrontation of witness, complying with rehearing and evidentiary disclosure deadlines, and obtaining signatures for various forms; 2) the hearing officers for the two hearings gave inconsistent descriptions in their video summaries; 3) the hearing officer convicted him without sufficient evidence that he possessed the weapon; 4) the hearing officer denied him the opportunity to present witnesses who could testify that they owned the weapon; 5) the hearing officer denied his request to view the video and failed to disclose the video summary twenty-four hours before the hearing; 6) the hearing officer did not provide a sufficient explanation for his findings in the Report of Discipline Hearing ("Hearing Report"); 7) the hearing officer's sanctions

3

were too severe; and 8) the hearing officer failed to provide him with notice of the Conduct Report or the hearing.  (Dkt. 9-10 at 2-4.)

The Facility Head denied his appeal and explained:

> All available information concerning your appeal has been reviewed. The conduct report is clear that you were in violation of an A[-]106. I agree with sanctions imposed. No procedural or due process errors are noted. A preponderance of the evidence supports the finding and the sanction is an appropriate use of progressive discipline. Since a liberty interest loss is involved, you may appeal this decision to the final reviewing authority. If you do appeal, please provide a copy of this response with that appeal.

*Id.* at 1.

Mr. Webb then appealed to the Final Reviewing Authority.  In denying his final appeal, the Appeal Review Officer stated that "[t]he procedure and due process of this case appear to be true and accurate," and explained: "The charge is clear; the evidence sufficient. The sanctions are within the guidelines of the Disciplinary Code for Adult Offenders.  There is no present information indicating modification or dismissal is necessary." (Dkt. 9-11.)

Mr. Webb then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III.  ANALYSIS

In his petition, Mr. Webb raises several grounds for relief.  First, he claims that the hearing officer violated multiple prison policies and procedures.  (Dkt. 2 at 4-6, 9-10.)  Second, he asserts that the hearing officer violated his due process rights by convicting him without sufficient evidence.  *Id.* at 10.  Third, he argues that the hearing officer violated his due process rights by denying him the opportunity to present an exculpatory witness.  *Id.* at 6, 9.  Fourth, he claims that the hearing officer violated his due process rights by denying his request to view the video and delaying his access to the video summary.  *Id.* at 9.  Fifth, he argues that the hearing officer violated his due process rights by imposing sanctions that are too severe without justification.  *Id.* at 10.

4

A. **Prison Policies**

To begin, Mr. Webb argues that the hearing officer violated several prison policies and procedures. (Dkt. 2 at 4-6, 9-10 (Mr. Webb asserting that the hearing officer failed to adhere to the prison's policies and procedures for approving and appointing lay advocates, documenting denied witnesses and evidence, permitting cross examination and confrontation of witnesses, complying with rehearing and evidentiary disclosure deadlines, and obtaining signatures for various forms).) Respondent asserts that violations of prison policies and procedures are not appropriate for habeas relief. (Dkt. 9 at 13-14.)[2]

Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n. 2 (1991) ("[S]tate-law violations provide no basis for federal habeas

---

[2] In addition to arguing that policy violations are not appropriate for habeas review, Respondent claims that due process does not require the appointment of a lay advocate for prisoners. (Dkt. 9 at 13 (citations omitted).) A prisoner is not entitled to a lay advocate unless he is illiterate, or the case is complex. *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Webb was not entitled to a lay advocate because he has not argued that either of these exceptions apply nor does the plain view of his petition suggest that he is illiterate or that the issues are complex. (Dkt. 2.) Moreover, Respondent contends that Mr. Webb was not entitled to cross examine or to confront witnesses. (Dkt. 9 at 12.) The Court agrees for two reasons. First, Mr. Webb appears to argue that the prison deprived him of the right to cross examine and to confront his own "favorable" witness. (Dkt. 2 at 5.) However, cross examination and confrontation applies to adverse witnesses not favorable witnesses. Second, even if Mr. Webb believed that the witness was adverse, prisoners have no "right to confront or cross-examine adverse witnesses in [a] disciplinary proceeding." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Accordingly, Mr. Webb's arguments fail.

relief."). Accordingly, to the extent that Mr. Webb claims that the hearing officer violated the prison's policies and procedures, his claims are denied.[3]

**B.      Sufficiency of Evidence**

Additionally, Mr. Webb asserts that the hearing officer violated his due process rights by convicting him without sufficient evidence that he possessed the weapon. (Dkt. 2 at 10.)[4] In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652

---

[3] Because the Court denies Mr. Webb's policy claims on the merits, it need not consider Respondent's exhaustion argument. (Dkt. 9 at 7-8.) *Cf. Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010) (courts may bypass the issue of exhaustion and deny petitioner's habeas claim on the merits) (citing *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997)).

[4] In conjunction with his sufficiency of evidence arguments, Mr. Webb also suggests that the evidence was not sufficient because the hearing officer did not consider Dillion Merrill's testimony. (Dkt. 2 at 10.) The Court construes this claim as a denial of witness claim and addresses it in the subsequent section.

(7th Cir. 2000)). A Conduct Report "alone" may establish the "some evidence" requirement. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Mr. Webb argues that there is insufficient evidence that he possessed the weapon because it was not found on his person but in a common room–the showers area.[5] (Dkt. 2 at 10.) Respondent counters that the video of the incident and the Conduct Report are sufficient evidence that Mr. Webb possessed the weapon in violation of A-106. Dkt. 9 at pp. 16-18; *see also* dkt. 9-13 at p. 6 (The Indiana Department of Corrections ("IDOC") defines possession as the following: "On one's person, in one's quarters, in one's locker or *under one's physical control*. . . .") (emphasis added). Respondent further specifies that Mr. Webb possessed the weapon because Lt. Robertson found the weapon in the pocket of Mr. Webb's shorts. *Id.* at 17-18.

Here, the Conduct Report and the video are sufficient evidence that Mr. Webb possessed the weapon. Notably, the Conduct Report specifies that Lt. Robertson found the weapon in Mr. Webb's shorts in the showers area while Mr. Webb was showering. (Dkt. 9-1 (stating that Lt. Robertson found an "edged weapon approximately 5 5/8 inches with a taped handle and [a] carboard sheath in the pocket" of Mr. Webb's shorts).) The Court also reviewed the video and finds that it corresponds with the video summary and confirms Lt. Robertson's statement in the Conduct Report. (Dkt. 9-7 (indicating that Mr. Webb was present in the showers area while Lieutenant Robertson searched the showers area and found the weapon in Mr. Webb's black shorts) and Dkt. 13 (video footage of the incident).) Specifically, the video shows Lt. Robertson entering the showers area and searching a pair of black shorts that were draped over the shower wall. (Dkt. 13.) During the search, Lt. Robertson removed an object from the black shorts and placed it in his

---

[5] Mr. Webb does not dispute the fact that the weapon that Lt. Robertson found violates A-106. (Dkt. 2, Dkt. 9 at 2.) *See also* Public Docket Sheet (indicating that Mr. Webb did not file a Reply). Rather, he merely disputes that there is insufficient evidence that he possessed this weapon. (Dkt. 2 at 10.) Accordingly, the Court will only address Mr. Webb's arguments on possession.

7

pocket. *Id.* The video also shows that Mr. Webb was in the showers area while Lt. Robertson searched his shorts, and that Mr. Webb retrieved the shorts after Lt. Robertson finished his search. *Id.*

Mr. Webb's arguments related to the sufficiency of the evidence are unpersuasive. He does not suggest that he was unaware that the weapon was in his shorts. (Dkt. 2.) Nor does he dispute that the shorts belonged to him, that his shorts were in the showers area, or that he was in the showers area. *Id.*; *see also* Dkt. 13 (showing Mr. Webb picking up the black shorts after Lt. Robertson searched the shorts and removed something from the pocket of the shorts). Therefore, Mr. Webb had control over the weapon because Lt. Robertson found the weapon in the pocket of Mr. Webb's shorts and Mr. Webb was present in the showers area. *Austin*, 779 F.3d at 439 (defining constructive possession as "control of an item (implying ready access and intended use actual or contingent) without physical possession"). Accordingly, the hearing officer had sufficient evidence to convict Mr. Webb and Mr. Webb is not entitled to relief on this ground.

**C.     Denial of Witnesses**

Mr. Webb also asserts that the hearing officer violated his due process rights by denying him the opportunity to present offender Dillon Merrill ("Mr. Merrill") as a witness. (Dkt. 2 at 5.) Specifically, he claims that Mr. Merrill's testimony is exculpatory because he would have testified that he owned the weapon and that he put the weapon in the showers area. (Dkt. 2 at 6, 10.) Respondent counters that Mr. Webb only requested Mr. Kelsheimer as a witness, that Mr. Merrill's testimony is not relevant, and that any failure to procure Mr. Merrill's live testimony is harmless. (Dkt. 9 at 12 (citing *Perez v. Carter*, 841 F. App'x 998, 1001 (7th Cir. 2021)).)

The right to call witnesses extends only to "material exculpatory evidence." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v.*

8

*McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).  The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary."  *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

Mr. Merrill's anticipated testimony does not create a reasonable probability of a different outcome because his testimony is not exculpatory.  Importantly, Mr. Merrill's ownership does not impact Mr. Webb's possession because even if Mr. Merrill owned the weapon, Mr. Webb had control over the weapon while it was in his shorts.  *Pigg v. Finnan*, 289 F. App'x 945, 946-47 (7th Cir. 2008) (holding that there was sufficient evidence that the petitioner possessed the contraband even when another prisoner claimed ownership of the contraband because the item was found in the petitioner's property); *see also Pannell v. Hyatte*, No. 22-1205, 2023 U.S. App. LEXIS 512, at *6-7 (7th Cir. Jan. 10, 2023) (holding that a prisoner may be found guilty of possession even when there is evidence that another owns the object if there is evidence that the prisoner possessed the object).  Moreover, Mr. Webb does not allege that Mr. Merrill would have testified that he placed the weapon in Mr. Webb's shorts or that Mr. Webb was unaware that the weapon was in his shorts. (Dkt. 2.)  Therefore, Mr. Merrill's testimony is immaterial and any error that the hearing officer committed by denying Mr. Webb the opportunity to present Mr. Merrill as a witness was harmless. *See Piggie*, 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings). Accordingly, Mr. Webb is not entitled to relief on this claim.[6]

### D. **Denial of Evidence**

---

[6] Mr. Webb also argues that the screening officer told him that he did not need to request Mr. Merrill as a witness because he previously testified at Mr. Webb's first hearing and Mr. Merrill's testimony would be transferred to the second hearing. (Dkt. 2 at 5.) Respondent disputes Mr. Webb's claim. (Dkt. 9 at 11 (citing Dkt. 9-3 and Dkt. 9-5 at 1).) The record is unclear on this issue. *See* Dkt. 2 at 6 (Mr. Webb claiming that the screening officer told him that he did not need to request Mr. Merrill because he testified at his first hearing and Mr. Merrill's testimony would transfer to the rehearing) *but see* Dkt. 9-5 at 1 (Screening officer declaring that he "did not promise [Mr.] Webb that the witness statements from the original case would automatically transfer to the rehearing"). However, this dispute is not material because Mr. Merrill's testimony is not exculpatory.

Mr. Webb further argues that the hearing officer violated his due process rights by denying his request to view the video and failing to provide the video summary twenty-four hours prior to the hearing.  (Dkt. 2 at 9.)  Respondent asserts that legitimate security concerns prevented the hearing officer from allowing Mr. Webb to view the video, that the video is incriminating, and that Mr. Webb misapplies the twenty-hour requirement for a notice of hearing to evidentiary disclosures.  (Dkt. 9 at 10-11 (citation omitted).)

Here, Mr. Webb was not entitled to view the video because there were security concerns that he might discover how to avoid detection.  *Id. See also* Dkt. 9-7.  Prisons may limit evidence disclosures when the disclosure is "hazardous to institutional safety or correctional goals" or "unduly threaten[s] institutional concerns."  *Wolff*, 418 U.S. at 566; *Campbell v. Henman*, 931 F.2d 1212, 1214-15 (7th Cir. 1991); *see also Jones* 637 F.3d at 848-49 (noting that the Seventh Circuit recognizes that there is a "'bona fide security justification' for non-disclosure [when] the video might allow the inmate to 'learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future.'") (citation omitted).  Thus, Mr. Webb's argument fails.

Mr. Webb was also not entitled to this evidence because the video is incriminating.  Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie*, 344 F.3d at 678.  As with witnesses, documentary evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver*, 539 F.3d at 780-81.  As noted above, the video is not exculpatory.  Therefore, any denials or delays related to this evidence are harmless.  *See Piggie*, 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings).  Accordingly, Mr. Webb is not entitled to relief on this ground.

**E.     Sanctions**

Finally, Mr. Webb argues that the hearing officer violated his due process rights by imposing sanctions that are too severe without justification. (Dkt. 2 at 10.)

1. **Written Justification for Sanctions**

Mr. Webb asserts that the hearing officer did not provide a written justification for the sanctions. *Id.* Respondent disputes Mr. Webb's claim. (Dkt. 9 at 15 (citing Dkt. 9-6).) "Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941 (internal quotation omitted). The written statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.*

Here, the Hearing Report satisfies due process. Mr. Webb's contention that the Hearing Report does not contain a written statement is belied by the record. Specifically, the Hearing Report indicates that the hearing officer sanctioned Mr. Webb to maximum sanctions because he possessed a "dangerous weapon [that] could cause serious bodily injury to another individual." (Dkt. 9-6; *see also* Dkt. 9-9.)

The purpose of a written statement in prison disciplinary proceedings is to "ensure both administrative accountability and meaningful review." *Scruggs*, 485 F.3d at 941. The Hearing Report satisfies these purposes. Importantly, Mr. Webb does not argue that the written statement on the Hearing Report is inadequate. (Dkt. 2 at 10 (Mr. Webb arguing that the Hearing Report does not contain a written statement).) Moreover, even if the Court accepts Mr. Webb's facts as true and assumes that the Hearing Report that he received did not contain the written statement identified above, Mr. Webb has not demonstrated how this prejudiced him. Accordingly, Mr. Webb's argument fails.

2. **Severity of Sanctions**

Mr. Webb also claims that the hearing officer's imposition of sanctions was too harsh because he sanctioned Mr. Webb to the maximum sanctions for a Class A offense even though he did not have any Class A convictions in thirteen years or major conduct issues in a year. *Id.* Respondent contends that Mr. Webb is not entitled to relief because the sanctions imposed are permissible by the IDOC's guidelines for an A-106 offense.  (Dkt. 9 at 14-15 (noting that the IDOC's regulations for an A-106 offense permit maximum sanctions of the deprivation of one year of credit time, a demotion of three class credits, and other lesser sanctions that do not concern custody) (citation omitted).)  "[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the crime. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

The Court reviewed the IDOC's sanctions for an A-106 offense and finds that Mr. Webb's sanctions comply with these guidelines.  Dkt. 9-13 at 40-41.)  Mr. Webb's sanctions are not a basis for habeas relief because he merely claims that his sanctions are too severe due to his conduct history.  (Dkt. 2 at 10.)  A court may not review habeas relief claims alleging harsh sanctions when the sanctions comply with statutory guidelines. *Lauderdale-El v. Smith*, No. 2-19-cv-00053-JPH-DLP, 2020 U.S. Dist. LEXIS 176681, at *13 (S.D. Ind. Sept. 25, 2020) (applying *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).  Accordingly, Mr. Webb is not entitled to relief on this ground.

## IV. CONCLUSION

For the reasons stated above, Mr. Webb is not entitled to habeas corpus relief under 28 U.S.C. § 2254. Accordingly, Mr. Webb's Petition for a writ of habeas corpus is **DENIED** and the action is **dismissed**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 2/6/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nicolas Webb, #209609
PENDLETON CORRECTIONAL FACILITY
Pendleton, Indiana  46064
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL'S OFFICE
abigail.recker@atg.in.gov